# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Weaver,
      Appellant

      v.

Schuylkill County Tax Claim
Bureau

: No. 1375 C.D. 2022
:
: Submitted: July 5, 2024

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge

**OPINION BY**
**JUDGE DUMAS**                    **FILED**: September 11, 2024

David Weaver (Appellant) appeals from an order of the Court of Common Pleas of Schuylkill County (trial court), which denied and dismissed Appellant's objections and petition to vacate the Schuylkill County Tax Claim Bureau's (Bureau) private sale of Appellant's property to JPM Holdings LLC (JPM). Appellant contends that the Bureau's mailed notice regarding the initial 2016 upset tax sale did not comply with the notice provisions of the Real Estate Tax Sale Law (RETSL)[1] because Appellant himself did not sign the certified mail receipt and the Bureau did not otherwise make reasonable efforts to notify Appellant. Upon review, we affirm.

---

[1] Act of July 7, 1947, P.L 1368, *as amended*, 72 P.S. §§ 5860.101 – 5860.803.

# I. BACKGROUND[2]

Appellant owns property located at 115 Sixth Street, Coaldale, Pennsylvania 18218 (Property), but has not resided there or paid the property taxes since 2014. In September 2016, the Property was exposed at an upset tax sale but received no bids. Thereafter, on or about August 16, 2021, JPM entered a private sales agreement and purchased the property for $4,567.48, and the county commissioners approved the sale on August 24, 2022. On September 14, 2022, Appellant filed objections and a petition to vacate. The trial court held a hearing.

Of relevance is the evidence pertaining to the 2016 certified mail return receipt for the mailed notice of the initial upset tax sale.[3] The notice was addressed to "Weaver David J, 118 6th St, Coaldale, PA 18218-1117" and delivered via certified mail restricted delivery on June 3, 2016. The return receipt was signed by Mabel Bonner, Appellant's mother, and stamped by the postmaster. Next to Mabel Bonner's signature there was a check mark in a box labeled "Agent."

The only testifying witness was Russell Motsko, an employee of the Bureau. Mr. Motsko testified that the 2016 mailed notice was sent to the same address that was on file for Appellant. According to Mr. Motsko, based on his experience, the postmaster stamped the receipt intentionally because it indicated that Mabel Bonner was the authorized agent for Appellant. Additionally, Mr. Motsko acknowledged a change in Appellant's address but testified that the Bureau did not learn of this change until 2019.

---

[2] Unless stated otherwise, we adopt the factual background for this case from the trial court's opinion, which is supported by substantial evidence of record. *See* Trial Ct. Op., 11/15/22. Substantial evidence is evidence that a reasonable person would accept as adequate to establish the fact in question. *Hite v. City of McKeesport*, 312 A.3d 420, 424 n.8 (Pa. Cmwlth. 2024).

[3] During the hearing, as he does on appeal, Appellant stated that there was no dispute with the notice of private sale. *See* Hr'g Tr., 10/24/22, at 32-33.

On November 15, 2022, the trial court issued an order and opinion denying Appellant's objections and dismissing Appellant's petition. The trial court explained that the 2016 mailed notice of the upset tax sale was sufficient because "[i]t appeared that the signature was of an individual authorized to act for [Appellant] . . . ." Trial Ct. Op., 11/15/22, at 5. Therefore, according to the trial court, the Bureau had satisfied the notice requirements of RETSL. Appellant timely appealed to this Court.

## II. ISSUES

Appellant asserts that the Bureau failed to establish that it complied with RETSL's notice requirements for the upset tax sale because Appellant's name was not signed on the return receipts. Appellant's Br. at 12-22. According to Appellant, this triggered the Bureau's obligation to make reasonable efforts to determine the whereabouts of Appellant, and the Bureau failed to do so. *Id.* at 12-16, 22-23. The Bureau and JPM (collectively, Appellees) respond that the trial court did not err in finding that the Bureau fulfilled its statutory notice obligations because Appellant's mother was authorized to sign the certified mailing restricted delivery notice of the upset tax sale. *See* Bureau's Br. at 3-5; JPM's Br. at 5-10.

## III. DISCUSSION[4]

"Generally speaking, when a property owner is delinquent in paying taxes, an upset tax sale is conducted to recover the 'upset price,' which is the total sum of the taxes owed plus any tax liens and municipal claims[.]" *In re Adams Cnty.*

---

[4] In tax sale cases, our review is limited to determining whether the trial court abused its discretion, erred as a matter of law, or rendered a decision not supported by substantial evidence. *In re Balaji Invs., LLC*, 148 A.3d 507, 509 n.2 (Pa. Cmwlth. 2016). The trial court has the exclusive province to weigh evidence, make credibility determinations, and to draw reasonable inferences from the evidence presented. *Smith v. Tax Claim Bureau of Pike Cnty.*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003). Where the trial court's findings are supported by substantial evidence of record, this Court may not disturb those findings on appeal. *Id.*

*Tax Claim Bureau*, 200 A.3d 622, 623 n.1 (Pa. Cmwlth. 2018). "[A] *valid*, unsuccessful upset sale is a condition precedent to the bureau's ability to engage in a private sale." *In re Balaji Invs., LLC*, 148 A.3d 507, 511 (Pa. Cmwlth. 2016) (emphasis added). Thus, a defective upset tax sale renders a subsequent private tax sale void.

One of the essential prerequisites to a valid upset tax sale is notifying the owner "[a]t least thirty days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid[.]"[5] Section 602(e)(1) of RETSL, 72 P.S. § 5860.602(e)(1). "To satisfy Section 602(e), the notice must be [accepted by] the personal addressee or someone with authorization." *Williams v. Cnty. of Monroe*, 303 A.3d 1098, 1101 (Pa. Cmwlth. 2023), *reargument denied* (Oct. 16, 2023) (citations omitted); *see also Husak v. Fayette Cnty. Tax Claim Bureau*, 61 A.3d 302, 311 (Pa. Cmwlth. 2013) ("Even when a return receipt is signed, the signature must belong to someone authorized by the owner to accept certified mail." (citations omitted)). When the return of a mailed notification is "either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification . . . the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him." Section 607a(a) of RETSL, 72 P.S. § 5860.607a(a); *see also* Section 602 of RETSL, 72 P.S. § 5860.602 ("no sale shall be invalidated because of proof that mail notice as herein required was not

---

[5] RETSL "requires the Bureau to provide three different forms of notice before commencing with an upset tax sale: (1) publication in two separate newspapers; (2) posting of notice on the property to be sold; and (3) mailing notice to the owner of the property." *Rice v. Compro Distrib., Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006) (citing Section 602 of RETSL, 72 P.S. § 5860.602).

received by the owner, provided such notice was given as prescribed by this statute.").

This Court has previously addressed whether the taxing authority established that an agent was authorized to sign the certified mail notice on behalf of the owner. In *Ali v. Montgomery County Tax Claim Bureau*, 557 A.2d 35, 37 (Pa. Cmwlth. 1989), the bureau mailed Ali notices of the upcoming upset tax sale of his properties. The return receipts were signed by "S. Croom" but nothing on the return receipt or elsewise indicated that "S. Croom" was authorized to act for Ali. *See id.* The trial court set aside the tax sale, and this Court affirmed because the bureau failed to establish that "S. Croom" was authorized to accept mail for Ali. *Id.*; *see also Husak*, 61 A.3d at 311-12 (explaining that the bureau failed to establish that the return receipt was signed by an authorized agent because the bureau presented no evidence as to the identity of the signatory, J. Pierce, and what, if any, relationship there was with the owner, the Federal National Mortgage Association).

Similarly, in *Dwyer v. Luzerne County Tax Claim Bureau*, 110 A.3d 223, 227 (Pa. Cmwlth. 2015), this Court affirmed the setting aside of a tax sale because the bureau failed to present evidence to establish that one co-owner of the property was authorized to sign the mailed notice on behalf of the other co-owner. The *Dwyer* Court explained that "the [b]ureau failed to present evidence that the post office permitted Garrity to receive certified mail addressed to Dwyer, that Garrity signed as 'Agent' for Dwyer, or that Garrity had previously signed for certified mail addressed to Dwyer." *Id.*

In reaching its decision, the *Dwyer* Court distinguished *Popple v. Luzerne County Tax Claim Bureau*, 960 A.2d 517, 523 (Pa. Cmwlth. 2008), where this Court held that the taxpayer had implied actual notice based on the signed

5

certified mail receipt. The notice "was signed for by someone with the same last name who was permitted by the Post Office to receive certified mail at this post office box, who indicated his capacity as 'Agent' and who signed for certified mail addressed to the Popples on other occasions." *Id.* at 523.[6]

The instant case is distinguishable from those cases in which this Court has invalidated a tax sale based on the bureau's failure to establish that the notice was signed by an agent authorized by the owner and is more analogous to *Popple*. For example, in *Dwyer*, we rejected the tax claim bureau's argument because there was "nothing in the record evidencing Garrity's authority to sign for certified mail addressed to Dwyer." *Dwyer*, 110 A.3d at 226 (emphasis omitted). Similarly, in *Husak*, the tax claim bureau "admitted it had no idea who 'J. Pierce' is or if he is authorized to accept certified mail for Fannie Mae." *Husak*, 61 A.3d at 312. Conversely, here, the evidence in the record demonstrates that Appellant's mother had authority to sign for certified mail addressed to Appellant. The certified mail

---

[6] The *Popple* Court confronted unique circumstances. In that case, the trial court had set aside a tax sale on grounds that the tax bureau had not complied with RETSL's posting requirements. On appeal, the *Popple* Court considered whether the signature of an agent implied taxpayers' actual notice of the tax sale and not whether the signature established strict compliance with RETSL's mailed notice requirement. *See Popple*, 960 A.2d at 523. The bureau was unable to prove strict compliance with the posting requirement because the taxpayers had filed their petition to set aside four years after the tax sale. *Id.* at 519-23. Typically, even when a taxpayer has actual notice of the tax sale, defective posting invalidates the tax sale because "the posting of notice serves the function of notifying the general public, as well as the owner, of a tax sale." *Id.* at 522 (citation omitted). However, the *Popple* Court found this rule inapplicable because the record established that the property was so difficult to reach ("[t]here [was] no direct road") that "the purpose of posting to provide notice to the general public could not be fulfilled in this case." *See id.* at 523. Under these "unusual facts," the *Popple* Court excused the bureau's inability to establish strict compliance with the posting requirement and considered whether the taxpayers had actual notice of the tax sale. *See id.* at 522-23. The Court concluded that the taxpayers had actual implied notice of the tax sale because, although they did not sign the return receipt, it was indicated that their agent signed it. *See id.* at 523.

restricted delivery[7] return receipt was signed by Appellant's mother, who checked the box indicating that she was signing as an "Agent" (rather than the "Addressee"), and it was stamped by the postmaster. *See* Hr'g Tr., 10/24/22, Appellant's Ex. 4. Further, both the 2014 and 2015 entry of claim notices addressed to Appellant were also signed by his mother. *See id.* Accordingly, the Bureau established that Appellant's mother signed the notice as Appellant's agent. *See Popple*, 960 A.2d at 523; *cf. Dwyer*, 110 A.3d at 227.

Due process requires tax claim bureaus to undertake reasonable efforts to provide actual notice of the tax sale. *Famageltto v. Cnty. of Erie Tax Claim Bureau*, 133 A.3d 337, 345 (Pa. Cmwlth. 2016) (*en banc*) (citation omitted). Accordingly, where a "significant doubt" exists "as to the actual receipt of such notification by the named addressee . . . the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him." Section 607a(a) of RETSL, 72 P.S. § 5860.607a(a). However, "[a]ctual notice in the tax sale context encompasses both express actual notice and implied actual notice." *In re Consol. Reps. & Return by Tax Claims Bureau of Northumberland Cnty. of Properties*, 132 A.3d 637, 647 (Pa. Cmwlth. 2016) (*en banc*) (cleaned up).

Here, the return receipt was signed by someone authorized to act on Appellant's behalf. This demonstrates that Appellant had implied actual notice of the tax sale. *See Popple*, 960 A.2d at 523. Accordingly, there was not a significant doubt as to whether Appellant received notice, and thus the Bureau was not required

---

[7] "Restricted delivery" is mail "delivered only to the addressee or the person he specifically authorizes in writing to receive his restricted delivery mail." *Dwyer*, 110 A.3d at 226 (citation omitted).

7

to exercise reasonable notification efforts. Therefore, the trial court did not err in finding that the Bureau complied with the notice requirements.[8]

## IV. CONCLUSION

A prerequisite for a valid tax sale is compliance with RETSL's notice requirements. Section 602 of RETSL, 72 P.S. § 5860.602. This includes notice by mail with return receipt signed by the taxpayer or a person authorized to act on their behalf. *See Williams*, 303 A.3d at 1101. Here, the Bureau met this requirement because the return receipt was signed by Appellant's mother, who was acting as Appellant's agent. Accordingly, we affirm the trial court's order.

**LORI A. DUMAS, Judge**

---

[8] In its brief, JPM asserts that Appellant's appeal is frivolous and that he should be liable for attorney's fees incurred by Appellees. *See* JPM's Br. at 11-13 (citing Pa.R.A.P. 2744). Although we have ruled in Appellees' favor, we reject the notion that Appellant's appeal is frivolous. "An appeal is frivolous if it is devoid of merit with no likelihood of success, such as an argument running counter to well-established rules of law." *Simmons v. Delaware Cnty. Tax Claim Bureau*, 796 A.2d 400, 405 (Pa. Cmwlth. 2002). However, "[a]n appeal is not frivolous simply because it lacks merit. Rather, it must be found that the appeal has no basis in law or fact." *Off. of Constable v. Dep't of Transp.*, 112 A.3d 678, 685 (Pa. Cmwlth. 2015) (citation omitted). Although it is established that a tax claim bureau satisfies the notice requirements if the mailed notice is signed by a person authorized to sign on behalf of the taxpayer, it is not well established when exactly an individual signing their own name is acting on behalf of the taxpayer. In fact, neither JPM nor the Bureau cite to such a case in their brief. *See* JPM's Br. at 7-13; Bureau's Br. at 4-6. For these reasons, JPM's request for fees is denied.

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Weaver,                          :
                    Appellant          :
                                       :   NO.  1375 C.D. 2022
              v.                       :
                                       :
Schuylkill County Tax Claim            :
Bureau                                 :

# **O R D E R**

AND NOW, this 11th day of September, 2024, the order of the Schuylkill County Court of Common Pleas, entered November 15, 2022, is AFFIRMED.

 

 

**LORI A. DUMAS, Judge**